**E-FILED**
Monday, 09 April, 2012  01:53:06 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Crim. No. 11-40073 |
| | ) | |
| CHRISTOPHER O. SCHLINGLOFF, | ) | Hearing Requested |
| | ) | |
| Defendant. | ) | |

## MOTION TO SUPPRESS EVIDENCE

Now comes the Defendant, CHRISTOPHER O. SCHLINGLOFF, by his attorney, and pursuant to Rule 12(b)(3)(C), Fed.R.Crim.P., moves this Court for the entry of an Order suppressing  all items of physical and/or digital evidence which were seized and obtained from the Defendant's HP notebook computer and Hitachi external storage device by officers and agents of the United States Department of State, Diplomatic Security Service (DSS), on November 9, 2010, December 17, 2010, and on subsequent dates thereafter.

As grounds therefore, the Defendant states as follows:

I.      Factual Background

1.      On November 9, 2010, officers and agents of the United States Department of State, Diplomatic Security Service (DSS), executed a federal search warrant at a residence located at 1816 2nd Avenue, Rock Island, Illinois, as part of an

1

investigation of passport/document fraud and identity theft. The federal search warrant authorized the agents' seizure of computers and electronic storage media, and their search of those devices, for evidence of violations of Title 18 U.S.C. § 1542. A true and correct copy of the search warrant, and the affiant agent's application therefore, are attached hereto and marked "Exhibit 1."

2.  Pursuant to their execution of the  federal search warrant, the agents seized computers and electronic storage media from the residence, including, but not limited to, the Defendant's HP notebook computer and Hitachi external storage device.

3.  Subsequent thereto, the agents had all of the computers and electronic storage devices seized pursuant to the federal search warrant, including Defendant's HP notebook computer and Hitachi external storage device, sent to the United States Diplomatic  Security Service, Computer Investigations and Forensics Division Offices located in Arlington, Virginia, for a computer forensics examination.

4.  On December 17, 2010, Agent Scott McNamee, a contract computer forensic analyst for the United States Diplomatic Security Service, Computer Investigations and Forensics Division, conducted a forensic examination of the Defendant's HP notebook computer and Hitachi external storage device at the Division's offices in Arlington, Virginia.

5.  As part of his forensic examination of both the Defendant's notebook

2

computer and external storage device, Agent McNamee utilized a computer software program known as "Forensic Tool Kit" (FTK) to index, or catalog, all of the files on the computer and storage device into a viewable format. One of the features of FTK is that once it completes the indexing process, it generates an "overview screen" that advises the user how many images, videos, and documents are on the computer or storage device, and whether there are encrypted documents or files that may be ignored (such as program files). The overview screen also lists those files that are flagged by the software as "KFF (Known File Filter) Alert" and "KFF Ignorable" files. The "KFF Alert" flags those files that are identifiable from a library of known files previously submitted by law enforcement ( most of which are images of child pornography) by the hash values associated with the flagged files.

6.     Thus, in this case, notwithstanding his knowing that the scope of the search warrant that was executed by the agents on November 9, 2010, was limited to the seizure of evidence of violations of Title 18 U.S.C. § 1542 (passport/document fraud and identity theft), Agent McNamee, in conducting his forensic examination of the Defendant's notebook computer and external storage device, utilized a computer software program, FTK, that allowed him, through its use of "KFF (Known File Filter) Alerts," to unlawfully expand the scope of the warrant and to search for evidence of child pornography on the Defendant's notebook computer and external storage device.

7.     In fact, on December 17, 2010, during his forensic examination of the Defendant's external storage device using the FTK software program, Agent McNamee  discovered a video file entitled, "Vicky," which  FTK's " Known File Filter Alert" identified as child pornography based on the hash value of the file and its match of the hash value of a file of known  child pornography as identified by the National Center for Missing and Exploited Children.  Agent McNamee then opened the video file and observed an image of a prepubescent female and an adult male, which McNamee recognized, from his training and experience, as part of the "Vicky" series of known child pornography which included video of the minor female performing oral sex on the adult male.  At this point, Agent McNamee ceased his examination of the storage device and alerted his superiors to what he had found on the device.

8.     Thereafter, on February 4, 2011, Agent Michael Juni of the United States United States Department of State, Diplomatic Security Service, sought and obtained a second search warrant from United States Magistrate Judge Ivan D. Davis of the United States District Court for the Eastern District of Virginia to search the Defendant's HP notebook computer and Hitachi external storage device for evidence of child pornography.  A true and correct copy of the second search warrant, and the affiant agent's application therefore, are attached hereto and marked "Exhibit 2."

9.     That in the "Probable Cause" section of Agent Juni's application for

search warrant (Pages 2-5, Paragraphs 4-10), the only factual basis for establishing probable cause for searching the notebook computer and external storage device for evidence of child pornography was a brief recitation of Agent McNamee's discovery of the "Vicky" video file on the external storage device and his opening and viewing of that file. Those facts, however, became known to Agent McNamee only through his use of the FTK software program and its "Known File Filter Alerts" for the presence of child pornography, which allowed him to search the contents of computer files that were beyond the scope of the first warrant that authorized a search only for evidence of document/passport fraud. Nonetheless, Magistrate Judge Davis issued the second search warrant.

10.    Thereafter, on May 18, 2011, Agent Michael Juni of the United States United States Department of State, Diplomatic Security Service, sought and obtained a third search warrant from United States Magistrate Judge John F. Anderson of the United States District Court for the Eastern District of Virginia to search other segments of the Defendant's HP notebook computer and Hitachi external storage device for evidence of child pornography. A true and correct copy of the second search warrant, and the affiant agent's application therefore, are attached hereto and marked "Exhibit 3."

11.    Once again, in the "Probable Cause" section of Agent Juni's application for search warrant (Pages 2-5, Paragraphs 4-11), the only factual basis for establishing

probable cause for searching other segments of the notebook computer and external storage device for evidence of child pornography was a brief recitation of Agent McNamee's discovery of another video file of child pornography on another segment of the external storage device and his opening and viewing of that file. According to paragraph 10 of Agent Juni's complaint, the file that was flagged by FTK's "Known File Filter Alert" was named "[boy+man]!!!!! 6-7 boy strip, suck, fucked by mantrazcollection!.mpg" and was identified as known child pornography by the hash value of the file as identified by the National Center for Missing and Exploited Children. Agent McNamee then opened the video file and observed an image of a prepubescent male and an adult male who appeared to be performing anal sex on the prepubescent male. Those facts, however, became known to Agent McNamee only through his use of the FTK software program and its "Known File Filter Alerts" for the presence of child pornography, which allowed him to search the contents of computer files that were beyond the scope of the first warrant that authorized a search only for evidence of document/passport fraud. Nonetheless, Magistrate Judge Anderson issued the warrant.

12. Based upon the agents' multiple searches of the Defendant's notebook computer and external storage device, pursuant to the three federal search warrants that were issued by three different judges over a seven month period, the Government has obtained what it alleges as evidence of a substantial number of

image and video files depicting child pornography that it will seek to use as evidence at the trial of this case.

II.     Legal Argument

13.     Reviewing courts have assumed that citizens have a legitimate expectation of privacy in their computer files, and thus have applied Fourth Amendment principles to computer searches. *See, e.g., United States  v. Stabile*, 633 F.3d 219 (3d Cir. 2011) (police obtained warrant to search computer and court analyzed under Fourth Amendment principles); *United States  v. Mann*, 592 F.3d 779 (7th Cir. 2010) (same); *United Stats  v. Burgess*, 576 F.3d 1078 (10th Cir. 2010) (same).

14.     The Fourth Amendment requires that a search warrant describe the things to be seized with sufficient particularity to prevent a general exploratory rummaging in a person's belongings.  *United States v. Carey,* 172 F.3d 1268, 1272 (10th Cir. 1999);  *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927) ("The requirement that warrants shall particularly describe things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is to be left to the discretion of the officer executing the warrant.")

15.     The description of items to be seized limits the scope of the search to areas where those items are likely to be discovered. *Platteville Area Ap't. Ass. v. City of Platteville*, 179 F.3d 574, 579 (7th Cir.1999). Thus, the  question is whether, in light

7

of the limitations in the warrant, the execution of the search was reasonable-the

touchstone for all Fourth Amendment inquiries. *Id.;  see also Illinois v. McArthur*, 531

U.S. 326, 330, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001).

16.     In *United States  v. Mann*, 592 F.3d 779, 784-85 (7th Cir. 2010), a case that

is remarkably similar to the case at bar, the Seventh Circuit held that a police

detective who utilized the software program "Forensic Took Kit" to index and

catalog the files on the defendant's computer and storage media exceeded the scope

of the  search warrant by opening and viewing four of the files that were flagged by

the  "Known File Filter Alert" for child pornography.  As the Court stated:

> The same cannot be said of the four flagged "KFF Alert" files. Once
> those files had been flagged, Detective Huff knew (or should have known) that
> files in a database of known child pornography images would be outside the
> scope of the warrant to search for images of women in locker rooms,
> presumably images that Mann himself had captured.   Unfortunately for
> Mann, suppressing those four images has no impact on the outcome here.
> Without those images, the government still possessed ample evidence of child
> pornography to sustain both Mann's conviction and sentence. Although we
> hold that Officer Huff exceeded the scope of the warrant by opening the four
> flagged "KFF Alert" files, those files are severable from the remaining files
> seized. *See United States v. Buckley*, 4 F.3d 552, 557-58 (7th Cir.1993). We thus
> reject Mann's suggestion that all of the evidence of child pornography should
> be suppressed because Officer Huff exceeded the authorization of the warrant
> when opening the "KFF Alert" files.

*Id*. at 784-85.

17.     Unlike the *Mann* case, *supra*, however, where the detective found other

evidence of child pornography on the external hard drive that was separate and

distinct and not derived from the four files that were flagged by the "KFF Alert," in this case, Agent McNamee, on two occasions, exceeded the scope of the first search warrant by opening and viewing two separate files that were flagged by the "KFF Alert" as containing child pornography, and then Agent Juni compounded that flagrant Fourth Amendment violation by relying solely upon McNamee's tainted findings as the probable cause basis for the second and third search warrants.  (See Exhibit 2, pages 2-5, paragraphs 4-10; Exhibit 3, pages 2-5, paragraphs 4-11).

18.   The independent source doctrine of *Murray v. United States*, 487 U.S. 533 (1988), allows the government to introduce evidence that was derived from an illegal search if it was discovered independent of the illegality. *See United States v. Liss*, 103 F.3d 617, 621 (7th Cir. 1997).  With regard to searches that exceed the scope of a warrant, the Seventh Circuit asks two questions:

> The first question is whether the illegally obtained evidence affected the magistrate's decision to issue the search warrant. The second question is whether [the agent's] decision to seek the warrant was prompted by what he had seen during his illegal search . . . . In other words, would [the agent] have applied for the warrant if he had not illegally searched . . . ?

*U.S. v. Markling*, 7 F.3d 1309, 1315-16 (7th Cir. 1993) (applying reasoning of *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978)).

19.   Here, not only did Agent McNamee run the KFF Alert filter, but he also opened and viewed two of the files that had been flagged. Undoubtedly, the act of

opening the files and viewing their contents constitutes a search so as to implicate the Fourth Amendment. *See Mann*, 592 F.3d at 784-85 (finding that once files had been flagged with KFF filter, opening them and viewing the contents exceeded scope of warrant). Moreover, Agent Juni relied solely on that tainted evidence in setting forth a probable cause basis for the second and third warrants. Therefore, based upon the Seventh Circuit's reasoning of *United States v. Mann, supra,* there is no question that (1) Agent McNamee exceeded the scope of the first search warrant by opening and viewing the two files that were flagged by the KFF Alert, and (2) that the second and third search warrants were issued on the basis of illegally seized evidence in violation of the Fourth Amendment to the United States Constitution.

20.    Finally, this Court should rule that the good faith exception to the exclusionary rule, recognized by the Supreme Court in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), should not apply in this case where the affidavits supporting the second and third search warrants are tainted by evidence obtained in violation of the Fourth Amendment. *United States v. McGough*, 412 F.3d 1232, 1239–40 (11th Cir.2005) (holding that the good faith exception does not apply where a search warrant is issued on the basis of evidence obtained as the result of an illegal search); *United States v. Wanless*, 882 F.2d 1459, 1466–67 (9th Cir.1989) (same); *United States v. Vasey*, 834 F.2d 782, 789 (9th Cir.1987) (holding that a "magistrate's consideration of the evidence does not sanitize the taint of the illegal warrantless

search"). This is particularly so, because the Seventh Circuit issued its ruling in *United States v. Mann, supra*, on January 20, 2010, and any reasonable law enforcement officer should have known of controlling authority in this circuit with respect to searches of computers when Agent McNamee conducted his forensic examination of the Defendant's laptop computer and external storage device on December 17, 2010, and reported his findings to Agent Juni who incorporated those findings into the second and third warrant applications. *United States v. Koerth*, 312 F.3d 862, 869 (7th Cir. 2002)(law enforcement officers are charged with knowledge "of well established legal principles as well as an ability to apply the facts of a particular situation to those principles").

WHEREFORE, Defendant requests the entry of an Order suppressing all items of physical and/or digital evidence which were seized and obtained from the Defendant's HP notebook computer and Hitachi external storage device by officers and agents of the United States Department of State, Diplomatic Security Service (DSS), on November 9, 2010, December 17, 2010, and on subsequent dates thereafter.

CHRISTOPHER O. SCHLINGLOFF,  Defendant

/s/ George F. Taseff
Attorney for Defendant
Assistant Federal Public Defender
401 Main Street, Suite 1500
Peoria, Illinois 61602
Phone: 309/671-7891
FAX:   309/671-7898
Email: george_taseff@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the filing: Mr. Michael D. McCoy, Assistant United States Attorney, 1830 Second Avenue, Suite 320, Rock Island, IL 61201.

/s/ George F. Taseff
Attorney for Defendant
Assistant Federal Public Defender
401 Main Street, Suite 1500
Peoria, Illinois 61602
Phone: 309/671-7891
FAX:   309/671-7898
Email: george_taseff@fd.org