E-FILED
Monday, 09 April, 2012  01:53:06 PM
Clerk, U.S. District Court, ILCD

AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
Central District of Illinois

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>1816 - 2nd Avenue, Rock Island, Illinois, and all<br>appurtenances thereto and improvements thereon | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.  10- *mc -4037*

**DEFENDANT'S EXHIBIT**

_____1_____

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Central_____ District of _____Illinois_____ *(identify the person or describe the property to be searched and give its location)*:
1816 - 2nd Avenue, Rock Island, Illinois, and all appurtenances thereto and improvements thereon, more particularly described in Attachment A.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:
See Attachment B.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before   _____November 17, 2010_____
                                                                                                      *(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.   ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
Thomas J. Shields_____
                    *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐for ____ _____days *(not to exceed 30)*.
                                ☐until, the facts justifying, the later specific date of ____ _____.

Date and time issued:  _____November 3, 2010_____
                                        _____at 2:57 ___

_____
                                *Judge's signature*

City and state:   Davenport, Iowa_____    _____Thomas J. Shields, United States Magistrate Judge_____
                                                                                        *Printed name and title*

143

AO 106 (Rev. 01/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Central District of Illinois

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No. 10- *mc — 4037*
1816 - 2nd Avenue, Rock Island, Illinois, and all )
appurtenances thereto and improvements thereon )
)

**FILED**
NOV - 3 2010
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the ___ Central ___ District of ___ Illinois ___ . *(identify the person or describe property to be searched and give its location):* 1816 - 2nd Avenue, Rock Island, Illinois, and all appurtenances thereto and improvements thereon, more particularly described in Attachment A.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):* See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___ 18 ___ U.S.C. § ___ 1542 ___ , and the application is based on these facts: See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Josiah Keats, Special Agent, U.S. Department of State
*Printed name and title*

Sworn to before me and signed in my presence.

Date: November 3, 2010

City and state: Davenport, Iowa

_____
*Judge's signature*

Thomas J. Shields, United States Magistrate Judge
*Printed name and title*

127

**AFFIDAVIT**

Your affiant, Josiah Keats, being duly sworn, deposes and states as follows:

1.      I am a Special Agent with the United States Department of State, Diplomatic Security Service (DSS), currently assigned to the Chicago Field Office.   I have been employed as a Special Agent with DSS for over one year.   As part of my official duties with DSS, I am assigned to conduct investigations of alleged federal criminal law violations. In my capacity as a Special Agent with DSS, I have participated in investigations involving, among other things, passport fraud and identity theft.

2.      I submit this affidavit in support of an application pursuant to Fed. R. Crim. P. 41 for a warrant to search the residence shared by Randolph Gregg BRANDYBERRY and Homero GOMEZ Garcia, a/k/a "Jonathan Justin Taylor", located at 1816 2nd Avenue, Rock Island, IL (hereinafter "the Premises") and more fully described in Attachment A.

3.      I know Homero GOMERZ Garcia and Randolph Gregg BRANDYBERRY reside at the location to be searched based on the contents of various reliable records, both commercial and governmental, to wit:

a.      On or about July 21, 2010, Homero GOMEZ Garcia, under his alias "Jonathan Justin Taylor", submitted an Application for a U.S. Passport by mail.   On the application, GOMEZ listed his mailing address as "1816 2nd Avenue, Rock Island, IL."

b.      On January 23, 2010, the State of Illinois issued driver's license #T460-4308-1118 to GOMEZ in his alias, "Jonathan Justin Taylor." The address associated with the license is 1816 2nd Avenue, Rock Island, Illinois 61201.

c.      The minutes of the Rock Island Board of Zoning Appeals dated April 8, 2009 indicate BRANDYBERRY applied for a zoning variance to allow for living space to be constructed on the first floors of both 1810 and 1812 2nd Avenue, Rock Island, IL.

d.      A commercial database commonly used by law enforcement indicates BRANDYBERRY established cable service at 1816 2nd Avenue, Rock Island, Illinois 61201 in January 2010.

e.      On February 27, 2010, the State of Illinois issued driver's license #B653-7275-3139 to BRANDYBERRY.   The address associated with the license is 1816 2nd Avenue, Rock Island, Illinois 61201.

4.      This affidavit is being submitted for the limited purpose of establishing probable cause to search the Premises, hence I have not set forth every fact that I know about this

investigation.   The statements of others set forth herein are described in substance and in part and not verbatim.

5.      Based upon the facts set forth in this affidavit obtained through my personal knowledge, knowledge obtained through my participation in this investigation, knowledge obtained from others, including other law enforcement officers, and reviews of documents related to this investigation, I know the following:

a.      GOMEZ, who is a national of the United Mexican States with no lawful immigration status in the United States of America, is believed to have first entered the United States from Mexico in 1999.

b.      On or about August 13, 2001, in Norristown, in the Eastern District of Pennsylvania, GOMEZ knowingly and willfully made false statements in an application for a United States Passport, to wit: he falsely claimed that his name was "A.N." (a person whose full name is known to me but is redacted here and hereafter), that he was born in Santa Rosa, California, and was, therefore, a United States citizen, and that his Social Security Number was XXX-XX-4395 (again, fully known to me, but redacted here).   In fact, the real "A.N" is a citizen of the United States of America who moved to Mexico with family members at the age of four.   In the course of submitting the fraudulent passport application, GOMEZ presented Pennsylvania driver's license #26896722 in the "A.N." identity. Additionally, the record indicates GOMEZ presented a birth certificate in the name "A.N." as evidence that he was born in Santa Rosa, California.   During the adjudication of the passport application, Department of State staff sent a letter to GOMEZ requesting that he provide additional supporting documentation to verify his identity.   In response, GOMEZ mailed to the Department of State photocopies of a Social Security card in the "A.N." identity, a health insurance benefit card in the "A.N." identity, individual income tax returns in the "A.N." identity, a Selective Service registration card in the "A.N." identity, a voter's registration card in the "A.N." identity, along with a multitude of other documents bearing the name "A.N."   GOMEZ was ultimately issued a United States passport.

c.      On or about October 3, 2001 in Durham County, North Carolina, GOMEZ, portraying himself to be "A.N.", filed a fraudulent petition for a name change, requesting that his name be changed from "A.N." to "Jonathan Justin Taylor." Records maintained by the Durham County court indicate GOMEZ supplied a California birth certificate in the name "A.N." at the time that he filed his petition. Additionally, court records show BRANDYBERRY completed an Affidavit of Character on behalf of GOMEZ, claiming that he knew GOMEZ (using the name "A.N.") for 20 years.   The true date of birth of A.N. is April 25, 1981; therefore, in order for BRANDYBERRY's statement to be true, he would have had to have known "A.N." nearly his entire life.   On October 4, 2001, the court clerk filed an order granting the name change.

d.  On or about December 18, 2001, GOMEZ submitted a form DSP-82 (Application for Passport by Mail) #205649854, along with court documents evidencing his name change to "Jonathan Justin Taylor."  On the DSP-82, the applicant may elect to list an emergency contact.  In this case, GOMEZ listed BRANDYBERRY as his emergency contact and identified him as his "friend."  The Social Security Number and date of birth on the application remained consistent with his first passport application in the "A.N." identity.  The Department of State subsequently issued U.S. Passport #205649854 in the name "Jonathan Justin Taylor."

e.  In 2006, the true "A.N." applied for a passport in California.  The execution of two passport applications in the same identity but by two separate individuals triggered a criminal investigation.  Diplomatic Security Service special agents in California subsequently interviewed "A.N." and verified his bona fides.  Additionally, the agents showed "A.N." a photograph of GOMEZ and asked if he knew the individual pictured.  "A.N." told the investigating agents that the person depicted is Homero GOMEZ Garcia.  "A.N." went on to explain that although he was born in Santa Rosa, California, he was raised with his family in La Huacana, Michoacan, Mexico.  He recognized the photograph of Homero GOMEZ Garcia because GOMEZ had been raised in the same region and was a family friend.

f.  Various government records demonstrate GOMEZ has continued to maintain the "Jonathan Justin Taylor" identity as his own.  For example, on May 18, 2005, GOMEZ renewed his Pennsylvania driver's license (#26896722) in the "Jonathan Justin Taylor" identity.  On January 23, 2010, GOMEZ obtained an Illinois driver's license (#T460-4308-1118) in the "Jonathan Justin Taylor" identity.

g.  Additionally, on or about July 21, 2010, GOMEZ submitted a form DS-82 (Application for a U.S. Passport by Mail) #240156768 to the U.S. Department of State in an attempt to renew his U.S. Passport he previously obtained in the "Jonathan Justin Taylor" identity.  The mailing address listed on the application is 1816 2nd Avenue, Rock Island, Illinois.  On the form, the applicant may elect to list an emergency contact.  In this case, GOMEZ lists BRANDYBERRY as his emergency contact and identifies BRANDYBERRY as his "stepfather."

h.  A review of Department of State records indicates BRANDYBERRY filed immigrant visa petitions with the U.S. Department of Homeland Security in 2006 on behalf of Teresa Garcia De Brandyberry and her three children, N.A. Gomez Garcia (known fully to me but redacted here and hereafter), T.F. Gomez Garcia (known fully to me but redacted here and hereafter), and E.T. Gomez Garcia (known fully to me but redacted here and hereafter).  The basis for BRANDYBERRY's petition was that he and Teresa Garcia De Brandyberry were married in 2006, thus making her eligible for a K3 visa (Spouse of a U.S. Citizen) and her three daughters eligible for K4 visas (children of K3 visa holders).  Investigators noted the three daughters shared the same surname combination as GOMEZ, that is, "Gomez Garcia."  Additionally, investigators note the three

daughters were all born in La Huacana, Michoacan, Mexico, which is the same place of birth of GOMEZ.   Therefore, there is reason to believe these four individuals are family members of Homero GOMEZ Garcia.   Furthermore, there is reason to believe BRANDYBERRY is thus aware of GOMEZ's true identity and the fact that GOMEZ has assumed the identity of a United States citizen in an attempt to conceal his unlawful immigration status.

6.    I know from experience and training as a criminal investigator that most individuals, including those engaged in criminal activities, maintain personal and family records and documents in their residence.   This includes, but is not necessarily limited to, passports, driver licenses, identification cards, tax receipts and records, financial records, school records, birth records/certificates, baptismal records, family photos and personal correspondence.

7.    Based upon my training and experience investigating document fraud and identity theft, I know that fraudulently obtained or stolen identification documents, such as driver's licenses, identification cards, Social Security cards, and birth certificates are extremely valuable to the offenders that possess them, as they convey not only identity, but also access to services, and in some cases, even serve as evidence of citizenship.   Once procured, these documents are rarely abandoned.   They are generally maintained for safekeeping in places where offenders have ready access to them, such as their residences or workplaces.

8.    This application seeks permission to search and seize records that might be found on the premises, in whatever form they are found.   I submit that if a computer or electronic medium is found on the premises, there is probable cause to believe those records will be stored in that computer or electronic medium, for at least the following reasons:

a.    Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted or viewed via the Internet.   Electronic files downloaded to a hard drive can be stored for years at little or no cost.   Even when the files have been deleted, they can be recovered months or years later using readily available forensic tools.   This is so because when a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data.

b.    Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space – that is, in space on the hard drive that is not currently being used by an active file – for long periods of time before they are overwritten.   In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.    Similarly, files that have been viewed via the Internet are typically automatically downloaded into a temporary Internet directory or "cache."   The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

131

d.    Based on a review of records associated with GOMEZ's most recent fraudulent passport application in July 2010, I am aware that computer equipment was used to generate, store, and print documents used in the passport fraud scheme. There is reason to believe that there is a computer system currently located on the premises.

9.    Based upon my knowledge, training and experience, I know that searching for information stored in computers often requires agents to seize most or all electronic storage devices to be searched later by a qualified computer expert in a laboratory or other controlled environment. This is often necessary to ensure the accuracy and completeness of such data, and to prevent the loss of the data either from accidental or intentional destruction. Additionally, to properly examine those storage devices in a laboratory setting, it is often necessary that some computer equipment, peripherals, instructions, and software be seized and examined in the laboratory setting. This is true because of the following:

a.    The volume of evidence. Computer storage devices (like hard disks or CD-ROMs) can store the equivalent of millions of pages of information. Additionally, a suspect may try to conceal criminal evidence; he or she might store it in random order with deceptive file names. This may require searching authorities to peruse all the stored data to determine which particular files are evidence or instrumentalities of crime. This sorting process can take weeks or months, depending on the volume of data stored, and it would be impractical and invasive to attempt this kind of data search on-site.

b.    Technical requirements. Searching computer systems for criminal evidence sometimes requires highly technical processes requiring expert skill and properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert is qualified to analyze the system and its data. In any event, however, data search processes are exacting scientific procedures designed to protect the integrity of the evidence and to recover even "hidden," erased, compressed, password-protected, or encrypted files. Because computer evidence is vulnerable to inadvertent or intentional modification or destruction (either from external sources or from destructive code imbedded in the system as a "booby trap"), a controlled environment may be necessary to complete an accurate analysis.

10.    In light of these concerns, I hereby request the Court's permission to seize the computer hardware (and associated peripherals) that are believed to contain some or all of the evidence described in the warrant, and to conduct an off-site search of the hardware for the evidence described, if, upon arriving at the scene, the agents executing the search conclude that it would be impractical to search the computer hardware on-site for this evidence.

11.    Searching computer systems for the evidence described in Attachment B may require a range of data analysis techniques. In some cases, it is possible for agents and analysts to conduct carefully targeted searches that can locate evidence without requiring a time-consuming

manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide files and directories, encode communications to avoid using key words, attempt to delete files to evade detection, or take other steps designed to frustrate law enforcement searches for information. These steps may require agents and law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning areas of the disk not allocated to listed files, or peruse every file briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, the Diplomatic Security Service intends to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment B.

12.    Based on the information set forth in this affidavit, I have probable cause to believe that Homero GOMEZ Garcia made certain false statements in order to procure a U.S. Passport in the identity of another person in violation of Title 18, United States Code, § 1542. Additionally, I have probable cause to believe that BRANDYBERRY either knowingly or in reckless disregard of the fact that GOMEZ entered and remains in the United States in violation of law, has concealed, harbored, or shielded him from detection in violation of Title 8, United States Code, § 1324. In addition, I submit there is probable cause to believe the items listed on Attachment B, which are the fruits, evidence, and instrumentalities of these violations, are present in the premises in which Homero GOMEZ Garcia resides, located at 1816 2nd Avenue, Rock Island, Illinois 61201.

Josiah Keats
Special Agent
Diplomatic Security Service
U.S. Department of State

Subscribed and sworn
before me this 3rd day of November, 2010

HONORABLE THOMAS J. SHIELDS
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**
Description of Property to be Searched
(1816 2nd Avenue, Rock Island, Illinois 61201)

### *DESCRIPTION OF LOCATION TO BE SEARCHED:*

The SUBJECT PREMISES (pictured in the attachments that follow) to be searched is more particularly described as: a two story commercial and residential zoned property with red brick siding on all exterior walls of the residential structure, as well as tan siding on the east side of the second story of the structure.   There is a patio separating the commercial and residential area. The commercial area of the property faces the north and is composed of grey stucco and red brick. The windows of the commercial side of the structure have rental advertisements displayed as they are currently vacant.   The main door to the residence is green with the following black address numbers displayed on the door "1814 – 1816" and "1810 – 1812."

134







## 1810-12 2nd. Ave.   "Facade Rendition"



### 1810-1812 2nd. Ave. Rock Island, Il 61210



**First Floor**



**Second Floor**

Revised 2/2000

BZA Agenda Packet                April 2009                Page 29 of 30

138





140

**ATTACHMENT B**
List of Items to be Seized
(1816 2nd Avenue, Rock Island, Illinois 61201)

1.     Any record or document bearing the names A.N., "Jonathan Justin Taylor", Teresa Garcia De Brandyberry, N.A. Gomez Garcia, E.T. Gomez Garcia, or any variation thereof;

2.     Any record or document bearing the Social Security Number of A.N. ending in 4395;

3.     Any and all documents bearing the name Homero Gomez Garcia or any variation thereof.

4.     Any record or document bearing the name of a person not resident at the premises;

5.     Any computers or electronic media that were or may have been used as a means to commit the offenses described on the warrant.   Specifically, any computer or electronic media which may have been used to access an online version of a Department of State form DS-82 (Application for a U.S. Passport by Mail) or any media which may have been used to store or print such a form.   Also, any peripherals, instructions, and/or software that may be needed to assist in completing a forensic examination of the aforementioned computer(s) or electronic media.

6.     Any documents relating to passport applications, to include passport application forms, receipts, photographs of the type typically submitted with passport applications, and correspondence relating to passport applications.

7.     Any documents relating to nonimmigrant or immigrant visa petitions, to include U.S. Department of Homeland Security forms I-130 (Petition for Alien Relative), forms I-797 (Notice of Results), correspondence to or from entities of the U.S. Department of Homeland Security relating to visa petitions, and any associated documents, whether in paper form or stored electronically.

8.     Any correspondence, whether in paper form or stored electronically, between any person and Teresa Garcia De Brandyberry, N.A. Gomez Garcia, E.T. Gomez Garcia, or any variation thereof.   Additionally, any correspondence, in any form, between any persons that makes mention of GOMEZ's true identity, Homero GOMEZ Garcia, or any variation thereof.

9.     Travel records and documents to include airplane tickets, flight itineraries, customs forms, hotel and rental car receipts, whether in paper form or stored electronically;

10.     Any document or other evidence, whether in paper or electronic form, of BRANDYBERRY's physical, material, or financial support of GOMEZ, or documents or evidence relating to violations of Title 8, United States Code, Section 1324 concerning concealing, harboring, or shielding certain aliens.

141

11.    Any and all documents serving as indicia of GOMEZ's and BRANDYBERRY's habitation of the premises, including:

a.    United States or foreign passports, birth certificates and records, drivers licenses, identification cards, employment identification;

b.    Receipts, correspondence, or photographs;

c.    Mail and bills addressed to GOMEZ, in any of his several aliases, and/or BRANDYBERRY.

142